UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONYX PHARMACEUTICALS, INC., | No. C-09-2145 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING BAYER'S MOTION TO BIFURCATE** |
| BAYER CORPORATION, *et al.*, | **(Docket No. 184)** |
| Defendants. | |

Bayer's Motion to Bifurcate came on for hearing before the Court on September 20, 2011. Docket No. 184. Bayer seeks to bifurcate the trial so that the Court will hold a jury trial for Onyx's damages claims and a bench trial for Onyx's equitable claims. For the reasons set forth below and as stated at the hearing, the Court **DENIES** the motion.

First, the Court finds that Bayer has already consented to a jury trial. Even if a plaintiff does not have a Seventh Amendment right to a jury trial on a particular claim, a defendant's failure to object to the demand for trial by jury may be deemed consent to such a trial. *See Simonelli v. University of California—Berkeley*, No. C 02-1107 JL, 2007 WL 3144863, at *3 (N.D. Cal. Oct. 23, 2007) ("Where a party demands a jury trial on an issue that is not jury triable, the opposing party's failure to object may be deemed 'consent' to the jury.") (citing Fed. R. Civ. P. 39(c); *Broadnax v. City of New Haven*, 415 F.3d 265, 270-272 (2d Cir. 2005)); *see also* 9 C. Wright & A. Miller, Fed. Prac. & Proc. § 2333 (3d ed. 2011) ("If one party demands a jury, the other parties do not object, and

the court orders trial to a jury, this will be regarded as a jury trial by consent.").[1] Bayer's proposed verdict form, *see* Docket No. 142, Exh. 7, at 1, and jury instructions, *see* Docket No. 142, Exh. 5, at 1B, 2B, 15B, submitted to Judge Patel in May of this year, clearly indicate that Bayer envisioned and consented to the jury deciding all disputed issues between the parties. Judge Patel's May 6, 2011 deadline required the parties to present all significant disputes of law, including procedural issues, to the Court at that time. *See* Docket Nos. 59, 61 (setting May 6, 2011 deadline for complying with Civ. L.R. 16-10(b)(7)-(10) and "serving and filing briefs on all significant disputed issues of law, including procedural . . . issues."). The Court's order also required the parties to file proposed jury instructions, verdict forms, and voir dire questions for a jury trial, or "in court cases, serving and filing proposed findings of fact and conclusions of law." Civ. L.R. 16-10(b)(9); Docket Nos. 59, 61. The parties filed only documents required for trial by jury. *See* Docket No. 142. In those documents, it is apparent that Bayer had already weighed the very bases for bifurcation it now asserts and incorporated those concerns into its proposed jury instructions. See Docket No. 142, Exh. 5, at 15B ("It is solely up to the Court to award a remedy if you determine DAST is a Collaboration Compound. You may only assign breach of contract damages if you find that Onyx has been injured by Bayer's conduct with respect to the development of Nexavar for CRC-KRAS and Breast AI.").

Moreover, after reassignment to this Court, the May 6 deadline was not vacated. *See* Docket No. 173 ¶¶ 8, 9. The parties also represented to the Court that all pretrial filings had been made, Docket No. 177 at 8, and Bayer failed to object or otherwise respond to this Court's June 28, 2011 pretrial order indicating that the trial would take place by jury only, Docket 180 at 1. Furthermore, this Court's pretrial order made no allowance for additional motions beyond those already submitted to Judge Patel; it merely required the parties to submit their preliminary statement to the jury, proposed voir dire questions, exhibits and objections to those exhibits, and trial briefs. *See* Docket 180. The parties' proposed jury instructions, verdict forms, and motions in limine submitted to Judge Patel – none of which leave any doubt as to the manner in which this case was to be tried –

---

[1] While the Ninth Circuit does not appear to have ruled on this issue, the *Simonelli* and *Broadnax* courts both point to agreement among the Fifth, Third, Sixth, and Second Circuits.

remain pending before this Court, and the case's reassignment left no room for revisiting those submissions. Bayer's failure to object to Onyx's jury demand within the schedule set by the Court can thus be deemed implied consent to trial by jury.

For the same reasons stated above, Bayer's motion to bifurcate is also untimely and Bayer provides no justification for its delay. *See Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Disruption to the schedule of the court and other parties in that manner is not harmless. Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to."). Bayer has failed to request an extension of or departure from the schedules already imposed by Judge Patel and this Court. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) ("Orders entered before the final pretrial conference may be modified upon a showing of 'good cause,'" but the Court may deny an untimely motion "where no request to modify the order has been made") (quoting Fed. R. Civ. P. 16(b)); *Use Techno Corp. v. Kenko USA, Inc.*, No. C-06-02754 EDL, 2007 WL 2349274, at *1 (N.D. Cal. Aug. 14, 2007) ("A court may deny as untimely a motion filed after the cutoff date in the scheduling order where no request to modify the order was made.") (citations omitted). In addition, even if it had requested a modification to the schedule, Bayer has failed to demonstrate good cause or otherwise explain how it has acted diligently. *See Johnson*, 975 F.2d at 609 ("Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension.") (internal quotations omitted); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2010 U.S. Dist. LEXIS 104996, at *7-8 (N.D. Cal. Sept. 17, 2010) (moving party must show reasonable diligence). Bayer cites no newly discovered facts or legal development occurring during the interim. Carelessness and/or change in litigation strategy do not amount to diligence. *Id.* ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.") (citations omitted); *Berger v. Rossignol Ski Co., Inc.*, No. C-05-02523 CRB, 2006 U.S. Dist. LEXIS 23085, at *14 (N.D. Cal. Apr. 25, 2006) (denying motion for leave to amend where "delay suggests that the omission of [certain patent infringement] contentions . . . were not 'errors,' but were instead a

1 deliberate strategic course which plaintiffs now wish to change."); *see also* Cal. Prac. Guide: Fed.
2 Civ. Pro. Before Trial § 16:160.1 (Rutter 2011) ("A party seeking bifurcation should request relief
3 as soon as the need becomes apparent. Delay may be a factor affecting the court's exercise of
4 discretion."). This alone is sufficient grounds for denying the motion. Bayer offers no reason why
5 this motion to bifurcate could not have been timely filed consistent with the scheduling orders
6 herein.

7 Third, the Court finds that bifurcation at this late hour would prejudice Onyx, which has
8 prepared its evidence and witnesses for a single trial by jury. Although prejudice is not required to
9 deny an untimely motion under Rule 16(b), *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295
10 (9th Cir. 2000) (citing *Johnson*, 975 F.2d at 609), here Onyx makes a valid argument that it has
11 suffered prejudice by relying on Bayer's apparent consent to a jury trial and investing substantial
12 "time and money on preparing witnesses, examination outlines, exhibits, opening and closing
13 arguments, voir dire, and other pretrial filings" with the expectation of a single jury trial. Opp. at
14 10. Witness lists, exhibit lists, proposed jury instructions and verdict forms have already been filed.
15 No party submitted proposed findings of fact and conclusions of law as would be required under
16 Civil Local Rule 16-10(b)(9) were a portion of this case be tried to the bench. Trial is imminent.

17 In addition, Bayer's argument that Onyx is not entitled to a jury trial on its claim that DAST
18 is a Collaboration Compound is, at the least, debatable. For example, *Adams v. Johns-Manville*
19 *Corp.*, cited by Bayer, considered only a motion to enforce a settlement agreement unaccompanied
20 by other claims for damages. See 876 F.2d 702, 709 (9th Cir. 1989) ("[I]n an action for specific
21 performance *uncomplicated by other requests for relief or by counterclaims*, there is no right to a
22 jury trial.") (quoting 5 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice ¶ 38.21, at 38-192
23 (2d ed. 1979) (emphasis added). By contrast, in the instant case, Onyx asserts damages claims
24 intertwined with its declaratory relief claim, as its claim for breach of fiduciary duty expressly
25 incorporates Bayer's failure to treat DAST as a Collaboration Compound. *See* Second Amended
26 Complaint ¶ 62(b). Indeed, despite Bayer's attempt to characterize the claims as entirely separate,
27 *see* Mot. at 5-6, the parties' own pretrial submissions belie this characterization. While Bayer makes
28 a point of noting in its proposed jury instructions that the jury may not award breach of contract

damages on the basis of any decision that DAST is a Collaboration Compound, it makes no such distinction with respect to the breach of fiduciary duty instruction. *See* Docket No. 142, Exh. 5, at 15B. In any event, even if compensatory damages were not available for breach of fiduciary duty based on the claim that DAST is a collaborative compound, it is not clear that a claim for nominal and punitive damages herein would not trigger the Seventh Amendment right to a jury trial. *See Tull v. United States*, 481 U.S. 412, 422 (1987) ("Remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity."); *id.* at 423 n.7 (characterizing punitive damages as a "legal remedy"); *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1102 (N.D. Cal. 2007) (finding that an award of nominal and punitive damages would satisfy the Seventh Amendment's amount in controversy requirement). Furthermore, Bayer concedes in its trial brief that whether DAST is a Collaboration Compound is relevant to Onyx's damages; it informs which portion of section 3.6 of the Collaboration Agreement applies to Bayer's alleged blocking of Nexavar's development (*i.e.*, inside or outside the "Field"). *See* Docket No. 194 at 12. Because the Constitution protects the right to a jury trial but not the right to a trial by the court, *see Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959), Onyx's colorable arguments regarding its right to a jury trial weigh against bifurcation. *See Ellis v. Rycenga Homes, Inc.*, No. 1:04-cv-694, 2007 U.S. Dist. LEXIS 24127, at *14 (W.D. Mich. Apr. 2, 2007) ("As plaintiff has at least a colorable right to trial by jury, the court will allow the case to proceed to jury trial.").

Finally, Bayer has failed to satisfy the Rule 42(b) requirements for bifurcation in any case. Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or thirdparty claims," so long as a bifurcated trial would "preserve any federal right to a jury trial." In the instant case, in addition to the concerns regarding separability and preservation of the right to jury trial noted above, Bayer has failed to convince the Court that bifurcation would result in a more efficient or convenient trial process, as it would be difficult for the Court to maintain its set trial schedule and the parties would have to determine what evidence was necessary for the jury to hear and what evidence should be reserved for the Court's later consideration. Some witnesses would

also have to testify twice. *See* Opp. at 14 (explaining that witnesses McCormick, Renton, Jones, and Brandau will present testimony relevant to both claims). Moreover, Bayer has failed to demonstrate prejudice. Bayer spends only two cursory paragraphs alleging prejudice, stating simply that "a risk exists that the jury may decide to award damages on Onyx's legal claims as compensation for the equitable claim on how DAST should be treated." Mot. at 7. Bayer does not adequately explain how such a risk, to the extent that it is valid, could not be cured by properly instructing the jury. Indeed, Bayer's own proposed jury instructions, as noted above, provide one way to address this concern. If Bayer were to prevail on its claim that DAST is not a Collaborative Compound and portray Onyx as overreacting, it is possible that Bayer could benefit from submitting this claim to the jury. It is thus by no means clear that inclusion of the claim would *a priori* prejudice rather than benefit Bayer.

Accordingly, even if the Court were to ignore Bayer's untimeliness and lack of good cause for its late motion, Bayer is still unable to demonstrate that bifurcation is necessary or desirable. The motion to bifurcate is therefore DENIED.

This disposes of Docket No. 184.

IT IS SO ORDERED.

Dated: September 21, 2011

_____
EDWARD M. CHEN
United States District Judge